**Perry DYER, Plaintiff,**

v.

**TW SERVICES, INC., et al., Defendants.**

**No. C95–1566Z.**

United States District Court,
W.D. Washington.

June 20, 1997.

Glory R. LaFountaine, LaFountaine Le-Beau Padilla, Seattle, WA, for Plaintiff.

Patrick Steven Pearce, Gaitan, Lenker, David & Myers, Seattle, WA, for Defendant.

## ORDER

ZILLY, District Judge.

THIS MATTER comes before the Court on defendants' motion for summary judgment (docket no. 56). The Court, having considered the defendants' motion and all papers filed in support of and in opposition to the defendants' motion, including the Declaration of Perry Lee Dyer (docket no. 68), hereby GRANTS defendants' motion and DISMISSES this action with prejudice.

### Discussion

Plaintiff Perry Lee Dyer is an African American male. On January 21, 1994, Mr. Dyer was hired by the defendants (hereinafter "Denny's") as a manager in training. After less than eight weeks, he was terminated. Mr. Dyer contends that Denny's terminated him solely because of his race in violation of federal and state law. Denny's claims that Mr. Dyer was fired for unprofessional and uncooperative behavior.

Denny's now moves for summary judgment, arguing that plaintiff has failed to establish a prima facie case of discrimination and, even if he has, he has not shown that Denny's reasons for terminating him were pretextual.

### A. Summary Judgment Standard

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists, and summary judgment is inappropriate, if there is a fact in contention which could affect the outcome of the suit under the governing law, and the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Lindahl v. Air France,* 930 F.2d 1434, 1436 (9th Cir.1991).

### B. Plaintiff's Title VII Claim

Title VII of the Civil Rights Act makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may show a violation of this statute by proving

the presence of a hostile work environment, disparate impact, or disparate treatment. *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109 (9th Cir. 1991). Mr. Dyer alleges disparate treatment, claiming he was "treated ... unfairly, held ... to higher standards," and had his work schedule "manipulated." Dyer Decl. at 1.

 To prevail on a claim of disparate treatment based on race, a plaintiff must prove his employer's challenged decision was motivated by intentional discrimination. *Washington v. Garrett,* 10 F.3d 1421, 1431–32 (9th Cir.1993). Because in most employment discrimination cases direct evidence of discriminatory motive is unavailable or difficult to obtain, the Supreme Court has set forth an indirect method of proof which relies on presumptions and shifting burdens of production. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, a plaintiff opposing summary judgment on his disparate treatment claim carries the initial burden of establishing a prima facie case of employment discrimination. *Garrett,* 10 F.3d at 1432. By establishing a prima facie case, the plaintiff raises a presumption that the employer engaged in intentional discrimination. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *Id.* at 253, 101 S.Ct. at 1093–94.[1] If the employer carries its burden, the presumption of discrimination "simply drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). The plaintiff must then raise a genuine factual issue as to whether the articulated reason was pretextual. *Garrett,* 10 F.3d at 1432. "If [the] plaintiff succeeds in raising a genuine factual issue regarding the authenticity of

the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed." *Id.*

### 1. *Prima Facie Case*

 The requisite degree of proof necessary to establish a prima facie case for Title VII claims on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). The plaintiff need only offer evidence "which gives rise to an inference of unlawful discrimination." *Id.* The amount of evidence that must be produced in order to establish a prima facie case is "very little." *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir. 1991).

 In *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, reaffirmed and clarified by *St. Mary's,* 509 U.S. at 506, 113 S.Ct. at 2746–47, the Supreme Court established the framework for a Title VII plaintiff to use circumstantial evidence[2] to state a prima facie case in the context of a discrimination-in-hiring case:

> This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

The Court recognized in *McDonnell Douglas* that these standards are flexible and adaptable to different factual circumstances. In the context of discriminatory discharge, a plaintiff may establish a prima facie case of discrimination by showing (1) that he was in the protected class, (2) that he was doing his job

---

1. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff, however, "remains at all times with the plaintiff." *St. Mary's,* 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

2. A prima facie case may also be established by the production of direct evidence of discrimination. *Palmer v. United States,* 794 F.2d 534, 537 n. 1 (9th Cir.1986). In this case, there is no direct evidence of discrimination.

well enough to rule out the possibility that he was fired for inadequate job performance, and (3) that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills.[3] *Sengupta v. Morrison–Knudsen Co.,* 804 F.2d 1072, 1075 (9th Cir.1986). "Without the demonstration of a need for the same services and skills that [the plaintiff] possessed, the conceptual underpinnings of *McDonnell Douglas* crumble." *Id.*

█ It is not disputed that Mr. Dyer is African American and was discharged by Denny's, thereby satisfying those elements of a prima facie case. As to the second element, defendant has produced some evidence that he was, at least at times, a satisfactory employee. He offers an "MT [Management Training] Progress Appraisal" dated February 4, 1994, approximately two weeks after his starting date, which is generally complimentary of his performance, and a "cooking specs" test taken on March 4, 1994, on which he scored 91.2%. Ex. G to LaFountaine Aff.; Ex. D to Dyer Decl. In light of Mr. Dyer's minimal burden the Court will treat this element as satisfied and consider defendants' evidence of poor performance in the context of pretext.[4] As to the last element, Mr. Dyer has offered no evidence concerning Denny's efforts to replace him and the Court is unable to find any evidence in the record identifying the person who replaced Mr. Dyer. For this reason alone, plaintiff has failed to establish a prima facie case.

Even assuming, however, that Mr. Dyer established a minimal prima facie case, he would still have to show that Denny's reasons

3. The Ninth Circuit has held that to establish a prima facie case of discriminatory discharge under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., the plaintiff must show he was (1) a member of a protected class [age 40–70]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications. *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 891 (9th Cir.1994). Assuming the *Wallis* prima facie elements also apply to a Title VII claim of discriminatory discharge, a plaintiff alleging he was terminated solely on the basis of race would have to establish that he was replaced by a person of a different race with equal or inferior qualifications. This requirement is somewhat different from *Sengupta's* requirement that the plaintiff show the employer sought "a replacement with qualifications similar to his own." This Court not need decide, however, which formulation of the replacement element applies because under either formulation, the plaintiff has failed to establish a prima facie case. Plaintiff has produced no evidence concerning replacement efforts by Denny's. The Court also notes that requiring a plaintiff to prove as part of his prima facie case that he was replaced by a person of another race is questionable in light of *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433, 439 (1996). In *O'Connor,* the Supreme Court held that the proper inquiry in an ADEA case is not whether the replacement is also a member of the protected class [age 40–70], but rather whether the replacement was substantially younger. The Court reasoned, "the fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out *because of his age.*" *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310, 134 L.Ed.2d at 438. The Seventh Circuit, relying on and interpreting *O'Connor,* has held that an employer cannot purge a claim of race discrimination by subsequently hiring a person of the same race and thus a plaintiff need not show that he was replaced by a person of another race in establishing his prima facie case. *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158 (7th Cir.1996). The court explained: "The [proper] question ... is whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground. That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition." *Id.* at 159.

4. Some courts have rejected the approach of considering the plaintiff's qualifications or job performance during the prima facie inquiry. *See, e.g., Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1505 (5th Cir.1988) (ADEA case); *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1119–21 (10th Cir.1991). In *Bienkowski,* the Fifth Circuit concluded that this approach cannot be reconciled with the Supreme Court's attempts, in *McDonnell Douglas* and *Burdine,* to simplify presentation of an employment discrimination case. The court found that "[p]lacing the plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy." *Bienkowski,* 851 F.2d at 1505. Having rejected that approach, the Fifth Circuit concluded that a plaintiff challenging his termination can ordinarily establish a prima facie case of discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the termination. *Id.* at 1506.

for terminating him were pretextual. He has failed to do so.

## 2. *Pretext*

■ Denny's maintains that Mr. Dyer was terminated for unprofessional conduct and lack of cooperation. Denny's offers as evidence copies of written complaints from other Denny's employees, captioned as "Conversation Confirmers," dated from February 26, 1994 through March 12, 1997, which detail communication and other problems with Mr. Dyer; a March 4, 1994 "MIT Training Progress Appraisal," which outlines Mr. Dyer's deficiencies in communication, responsibility, initiative, and cooperation; and the March 14, 1994 notice terminating Mr. Dyer, which indicates he was being terminated for "[l]ack of cooperation between employees and managers in training." Exs. M and N to Pearce Aff. Based on this evidence, the Court concludes that Denny's has successfully articulated a legitimate, nondiscriminatory reason for Mr. Dyer's termination. The burden now shifts back to Mr. Dyer to produce "specific, substantial evidence" that Denny's proffered reason was pretext and that race discrimination was the true reason for his termination. *See Wallis,* 26 F.3d at 890.

■ Mr. Dyer offers his own declaration which outlines that conduct he found to be discriminatory. He states that: (1) he was "discriminated against as to the terms and conditions of [his] employment," and was "the victim of retaliation and wrongfully discharged;" (2) when he complained about other employees, the General Training Manager "treated [him] unfairly, held [him] to higher standards and manipulated [his] work schedule;" (3) he was "set up for failure" because Denny's created a "stressful work environment;" (4) Denny's scheduled him to be trained by an individual, Ron Tomicich, who management knew "had problems working with persons of color;" (5) he experienced "intolerable and discriminatory actions from Mr. Tomicich;" (6) he was "reprimanded for not knowing the cooking specs" and "was told [he] needed to study;" (7) he was "placed [ ] with a cook trainer who consistently was rated as below average in this area;" (8) his time schedule was "continuously altered," assuring that he would continue to train under Mr. Tomicich; (9) he was reprimanded for having certain conversations with employees while other employees were not; (10) management "overlooked [his] concerns of unfair discriminatory treatment by other employees;" (11) Mr. Dyer's statement of "let's take it outside" made to another employee was misconstrued as an attempt to initiate a physical altercation; (12) he was reprimanded by Mr. Hudson, General Training Manager, for wearing one glove while cleaning the electric slicer after being told by Mr. Hudson that he only needed one glove to clean the machine; (13) when he complained about violations of company policy concerning food handling and preparation, Mr. Hudson called him insubordinate; and (14) he was subject to "unfair and discriminatory treatment." Dyer Decl. at pp. 1–4.

■ Mr. Dyer's general allegations of discriminatory treatment are conclusory and insufficient to raise a genuine issue of material fact as to pretext. The plaintiff alleges that Denny's treated him unfairly, but he has offered no specific instances where similarly situated employees of other races were treated differently for engaging in conduct similar to Mr. Dyer's. Mr. Dyer also fails to offer any evidence that would suggest a causal connection between the events that transpired at Denny's and his status as an African American.

The only reference to race as a factor in Denny's employment decision is found in Mr. Dyer's allegation that Denny's scheduled him to be trained under Mr. Tomicich, who had a history of problems with people of color. Mr. Dyer offers several "Counseling Review" forms showing that Mr. Tomicich had problems getting along with co-workers. On November 3, 1993, prior to Mr. Dyer's employment with Denny's, Mr. Tomicich was reprimanded for, among other things, violating Denny's commitment to a "discrimination-free" environment. Ex. A to Dyer Decl. The review form of that date states that Mr. Tomicich called an African American co-worker a "home boy," and called a co-worker with a different sexual orientation a "girlie boy." *Id.* The counseling review form indicates that Tomicich was told he would be terminated immediately if he did not correct

that behavior. Subsequent counseling review forms dated January 18, 1994 and February 2, 1994 show, among other things, that Tomicich was not displaying "team work spirit," was not "treating employees fairly," and needed to work on "creat[ing] a friendly environment by changing [his] attitude towards co-workers." *Id.* The forms do not refer, however, to any further acts of racial discrimination or insensitivity. While the review forms show that Mr. Tomicich had serious problems with co-workers, they also state that Tomicich was an "excellent" cook and "wheel" person with a high level of skill and was performing his job "at standards." *Id.*

While there is evidence that at one time prior to Mr. Dyer's employment Mr. Tomicich made racially insensitive remarks to co-workers, there is no evidence showing that he continued such behavior after reprimand or made any such remarks to Mr. Dyer. There is also no evidence to support Mr. Dyer's suggestion that Mr. Tomicich singled him out for poor treatment because he is African American. In fact, the evidence shows that Mr. Tomicich had problems getting along with all employees, regardless of their race. In addition, the complaints that allegedly resulted in Mr. Dyer's termination were filed by employees other than Mr. Tomicich and involved incidents unrelated to Mr. Dyer's relationship with Tomicich. Thus, the plaintiff's allegations regarding Mr. Tomicich do not support his claim that Denny's reasons for terminating him were pretextual.

Because Mr. Dyer has failed to establish a prima facie case, or alternatively because he has failed to produce specific, substantial evidence that Denny's proffered reason for terminating him was a pretext, the defendants' motion for summary judgment is granted and plaintiff's claims under Title VII dismissed. For the same reasons, the Court dismisses plaintiff's claims under 42 U.S.C. § 1981 and RCW 49.60.180.

### C. *Emotional Distress Claims*

As to plaintiff's claims for intentional and negligent infliction of emotional distress, plaintiff has presented no evidence to support either of these claims and therefore they should be dismissed. Plaintiff's vague references to "emotional turmoil" are insufficient to avoid summary judgment. *See* LaFountaine Aff., docket no. 63, at 2.

### *Conclusion*

The Court hereby GRANTS the defendants' motion for summary judgment and DISMISSES all claims with prejudice.

IT IS SO ORDERED.