**Cyril F. KAHALE, Jr., Plaintiff,**

v.

**ADT AUTOMOTIVE SERVICES, INC., a corporation, Does 1–100, Defendants.**

**Armand BALUYOT, Plaintiff,**

v.

**ADT AUTOMOTIVE SERVICES, INC., a corporation, Does 1–100, Defendants.**

**Nos. Civ. 96–00737 DAE,
Civ. 96–00746 DAE.**

United States District Court,
D. Hawaii.

April 14, 1998.

Michael Jay Green, David J. Gierlach, Honolulu, HI, for Cyril F. Kahale, Jr., Armand Baluyot.

Paul M. Salto, Torkildson Katz Fonseca Jaffe & Moore, Honolulu, HI, for ADT Automotive Services, Inc.

## AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard Defendant's Motion on April 6, 1998. Michael Jay Green, Esq., appeared at the hearing on behalf of Plaintiffs; Richard M. Rand, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.

## BACKGROUND

This case involves allegations of employment discrimination by two former employees of Defendant ADT Automotive Services,

Inc. ("Defendant"), the company that operates the "Aloha Auto Auction." Plaintiff Cyril F. Kahale, Jr., ("Kahale") was hired by Defendant on December 2, 1992 and worked in the collateral recovery department until he was terminated in November of 1995. Kahale alleges that he was discriminated against on the basis of his race, ancestry, age, and disability.[1] Specifically, Kahale asserts that Defendant was engaged in the practice of firing non-Caucasian employees and replacing them with less qualified Caucasian employees. Kahale contends that after he was terminated, his position was filled by a younger, Caucasian female who had less experience than he did in managing the collateral recovery department.

Plaintiff Armand Baluyot ("Baluyot") was hired by Defendant in June of 1990. Baluyot worked as an assistant controller until he was terminated on January 2, 1996. Baluyot alleges that Defendant discriminated against him on the basis of his race, ancestry, and age.[2] He asserts that after he was terminated, his position was filled by a younger, Caucasian female with less experience. Baluyot additionally maintains that he was terminated in part because of his accent.

## STANDARD OF REVIEW

Rule 56 provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322.

---

1. Kahale is an Asian/Pacific Islander.

2. Baluyot is an Asian/Pacific Islander.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

On December 29, 1997, Defendant filed a motion for summary judgment on Plaintiffs' claims for: 1) employment discrimination, 2) promissory estoppel, 3) negligent and/or intentional infliction of emotional distress, and 4) punitive damages. On March 19, 1998, Plaintiffs filed a memorandum in opposition to Defendant's motion for summary judgment.

### I. *Plaintiffs' Claims for Discrimination*

In their First Amended Complaint, Plaintiffs allege that Defendant "undertook a course of action that resulted in the termination of many non-Caucasian employees, which included them, then replaced them with less qualified younger Caucasian women." Defendant's Motion, p. 3. Defendant asserts that "it made a business decision to reduce overhead expenses by consolidating its Marshalling and Collateral Recovery ("CR") departments. That consolidation resulted in combining job functions which led to the elimination of Kahale and Baluyot's positions." *Id.*

 To survive summary judgment in an employment discrimination case, the plaintiff must establish a *prima facie* case by offering "evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Lowe v. City of Monrovia,* 775 F.2d 998, 1005 (9th Cir.1985) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "The evidence may be either direct or circumstantial and the amount that must be produced in order to create a *prima facie* case is 'very little.'" *Sischo–Nownejad,* 934 F.2d at 1110–11. A *prima facie* showing "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254.

"Although a *prima facie* case combined with disproof of the employer's explanations does not prove intentional discrimination as a matter of law, it may permit the fact finder to infer intentional discrimination, and thus preclude summary judgment for the employer." *Durham v. Xerox Corp.,* 18 F.3d 836, 839–40 (10th Cir.1994) (citing *St. Mary's*

*Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendant to offer evidence that the adverse action complained of was taken for legitimate, nondiscriminatory reasons. *Burdine,* 450 U.S. at 254; *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). Once the defendant fulfills its burden of production by articulating a legitimate, nondiscriminatory reason, then plaintiff's *"McDonnell Douglas* presumption of unlawful discrimination 'simply drops out of the picture.'" *Wallis,* 26 F.3d 885, 890 (9th Cir.1994) (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 510–11, 113 S.Ct. at 2749).

■ "In the discriminatory discharge context, the plaintiff must show (I) that he was within the protected class; (ii) 'that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance'; and (iii) 'that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills.'" *Sengupta v. Morrison–Knudsen Co., Inc.,* 804 F.2d 1072, 1075 (9th Cir.1986) (citations omitted). It is undisputed that Kahale and Baluyot are Asian/Pacific Islanders. Accordingly, Plaintiffs have established the first element of a *prima facie* case.

■ Defendant argues that Plaintiff Kahale cannot establish the second element of a *prima facie* case because he cannot establish that he was performing his job satisfactorily. However, in his concise statement of facts, Kahale provides a record of two job evaluations completed by Kahale's supervisor in July of 1994 and August of 1995. *See* Exhibit 1 attached to Plaintiffs' Concise Statement of Facts. In the July 1994 evaluation, Kahale's supervisor reported that: 1) he is an extremely loyal and trustworthy employee, 2) that he puts the company first at all times, 3) that he is developing into an excellent manager, and 4) that he is working on the needed skills. *Id.* In the August 1995 evaluation, Kahale's supervisor reported that he had come a long way in a very difficult job and that his added responsibilities are a real challenge which he has readily accepted and is handling very well so far. Based on these evaluations, and the minimal amount of evidence which Plaintiffs are required to produce in order to defeat a summary judgment motion on an employment discrimination claim, the court finds that Plaintiff Kahale has satisfied the second element of a *prima facie* case. *See generally Dyer v. TW Services, Inc.,* 973 F.Supp. 981, 985 (W.D.Wash. 1997).

■ Defendant alternatively asserts that Plaintiffs cannot establish the third element of a *prima facie* case because neither Kahale nor Baluyot were replaced following their termination from Defendant. Defendant contends that following their termination, Kahale's and Baluyot's job responsibilities were assumed by Dana Montague and Pattie Frietas, each of whom were employed by Defendant at the time Plaintiffs were terminated. Defendant therefore asserts that Plaintiffs cannot establish one of the requisite elements of a discrimination claim.

■ The court finds that Plaintiffs' failure to prove that they were replaced by a new employee upon their termination from Defendant is not fatal to their discrimination claim. Where the plaintiff's discharge is as a result of "a general reduction in the work force due to business conditions," the plaintiff does not necessarily have to establish that he was replaced by another employee. *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1421 (9th Cir.1990). Instead, the plaintiff can establish a *prima facie* claim of discrimination by showing "circumstantial, statistical, or direct evidence giving rise to an inference of … discrimination." *Id.*

■ Plaintiffs contend that they have produced sufficient evidence to establish a *prima facie* claim of discrimination. Plaintiffs point to the deposition testimony of Lionel Freitas, the Vice President of the Pacific Region for Defendant. In his deposition, Freitas states that he heard his supervisor, Michael Sandberg, make derogatory racial remarks. Specifically, Freitas testified that on one occasion he remembers Sandberg describing local people "as being unmotivated, needing more instruction than what he was used to seeing on the mainland, [and] that they didn't understand what he was trying to communicate to them…." Deposition of

Lionel Freitas, p. 81, attached as Exhibit 1 to Plaintiffs' Concise Statement of Facts. Plaintiffs also rely on the deposition testimony of Ann Choo, a former employee of Defendant who states that in her opinion, it seemed that local people were slowly being replaced by Caucasians. Choo also states that after she left Defendant, she was replaced by a Caucasian male, Dewey Hess. Plaintiffs also rely on the deposition testimony of Wendy Rose, who was present during the discussions regarding Plaintiff Kahale's termination. Rose states that she was asked to find a legal reason to terminate Kahale. Plaintiffs assert that this is evidence that Defendant's proffered reason for Plaintiffs' termination, namely the termination of Plaintiffs' positions following the consolidation of the Marshalling and CR departments, was pretextual. Finally, Plaintiffs point to the fact that after they were terminated, they were allegedly replaced by younger Caucasian females.

The court finds that Plaintiffs' circumstantial evidence of discrimination is enough under the lenient standard discussed above to survive a motion for summary judgment. The evidence produced by Plaintiffs, taken together, may leave a reasonable juror with the inference that Defendant's termination of Plaintiffs was based on their race and/or age. Accordingly, the court must deny Defendant's motion for summary judgment on Plaintiffs' claim of discrimination.

## II. Plaintiff Kahale's Claim for Promissory Estoppel

In Count II of his First Amended Complaint, Plaintiff Kahale asserts a claim against Defendant for promissory estoppel. Kahale alleges that in February of 1994, he was offered a position on the Island of Hawaii with the production company for the movie Waterworld, and that he was to receive a salary of $3,500.00 per week for over one year. Kahale contends that he was induced by his supervisor, Lionel Freitas, to keep his job with the Defendant because Freitas promised him that he would have a long-term job with the company. Kahale asserts that in reliance on this promise, he declined the employment offer from the Waterworld production company.

Defendant maintains that it is entitled to summary judgment on Kahale's claim for promissory estoppel because "[d]iscovery has confirmed that [Defendant] made no promises to Kahale and that Kahale did not rely on any promises, nor did any promises induce his decision to turn down the Waterworld production offer." Defendant's Motion, p. 15. Defendant provides the deposition testimony of Freitas wherein he states that he never told Kahale that he would be employed for any specific length of time and that he did not have the authority to make such a promise. Deposition of Lionel Freitas, p. 276, attached as Exhibit B to Defendant's Concise Statement of Facts. Freitas also states that it was Kahale's decision whether to stay with the Defendant or to go to work for the Waterworld production company. *Id.* Defendant avers that based on this testimony, Kahale cannot establish a cause of action for promissory estoppel.

In response to Defendant's motion for summary judgment, Kahale provides the deposition testimony of Lionel Frietas in which he testifies that Kahale told him that he had been offered a position with the Waterworld production company. In his deposition, Frietas states that he told Kahale that he "felt that long term he would be much better off staying with [Defendant] .... I said: Cyril, you are doing great in your job; you should stay; [Defendant] here is here for the long term; nobody is leaving; this business will do nothing with [sic] grow. Get that out of your head and stay with us." Deposition of Lionel Frietas, pp. 66–67, attached as Exhibit 1 to Plaintiffs' Memorandum in Opposition. In his deposition, Freitas states that Kahale did what he told him to do and declined the offer of employment from the Waterworld production company. Kahale also provides the deposition testimony of one of his coworkers, Wendy Rose, who states that Kahale told her "that he had an offer from Waterworld and that he turned it down." Deposition of Wendy Rose, p. 139, attached as Exhibit 3 to Plaintiffs' Memorandum in Opposition. Rose contends that Kahale told her that Freitas had told him that he had a secure employment opportunity with Defendant and that he turned down a position with Waterworld due to his conversation with

Frietas. *Id.* Later on in her deposition, Rose admits however that she knew very little about the conversation between Kahale and Frietas regarding the Waterworld job offer. Rose states that "the most I know about that is there was an offer made, there was an offer turned down because of secure employment at [Defendant]." *Id.* at 140.

█ Under Hawaii law, "[a] promissory estoppel may arise as an application of the general principle of equitable estoppel to certain situations where a promise has been made, even though without consideration, if it was intended that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice." *Application of Herrick*, 82 Hawai'i 329, 922 P.2d 942, 950 (1996). In the *Herrick* case, the Hawaii Supreme Court articulated the elements of a cause of action for promissory estoppel as follows: "(1) [t]here must be a promise; (2) [t]he promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability), (3) [t]he promisee does in fact rely upon the promisor's promise; and (4) [e]nforcement of the promise is necessary to avoid injustice." *Id.* at 950–51. "A 'promise' is defined as 'a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.' In elaborating on this term, the commentators have said that '[a] promisor manifests an intention if he believes or has reason to believe that the promisee will infer that intention from his words or conduct.'" *Id.* at 951 (citations omitted).

In this case, Plaintiff Kahale has failed to establish that Frietas promised him that he would be employed by the Defendant for the long term.[3] In his deposition, Frietas testified that he told Kahale that the Defendant was here to stay and that he should remain with the company. However, these statements do not constitute a promise of long-

term employment, nor do they establish the type of clear and definite promise which is required for a cause of action for promissory estoppel. *See Keenan v. Allan*, 91 F.3d 1275, 1279–80 (9th Cir.1996). Accordingly, the court GRANTS Defendant's motion for summary judgment with respect to Plaintiff Kahale's claim for promissory estoppel.

### III. *Plaintiffs' Claims for Negligent and/or Intentional Infliction of Emotional Distress.*

In their First Amended Complaints, Plaintiffs assert a cause of action against Defendant for negligent and/or intentional infliction of emotional distress. However, in their Complaints, Plaintiffs do not provide any facts or evidence in support of this cause of action. Instead, Plaintiffs refer to the preceding paragraphs of their complaints in which Plaintiffs allege that they were discriminated against on the basis of race, ancestry and age.[4]

█ Defendant argues that Plaintiffs' claims for negligent and/or intentional infliction of emotional distress are barred by Hawaii's Workers' Compensation exclusivity provision. Defendant additionally maintains that even if the claims are not barred, Plaintiffs have not alleged any extreme and outrageous conduct by Defendant. Accordingly, it is the Defendant's position that Plaintiffs have not stated a claim for emotional distress.

Hawaii's worker's compensation statute provides exclusive remedies for "personal injury ... by accident ... arising out of and in the course of the employment." HRS § 386–3 (1996). Defendant cites *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845 (9th Cir.1990), in which the Ninth Circuit, interpreting Hawaii law, held that claims for intentional infliction of emotional distress against an employer resulting from the nature of the employment, or discharge, are barred by Hawaii's worker's compensa-

---

**3.** In support of his claim for promissory estoppel, Plaintiff Kahale provides the deposition of Wendy Rose, one of his former co-workers. In her deposition, Rose states that Kahale told her that Frietas had made him an offer of long-term employment. However, as this testimony is hear-

say, it cannot be considered by the court in support of his claim. Fed.R.Civ.P. 56(e).

**4.** Plaintiff Kahale additionally alleges that he was discriminated against on the basis of disability.

tion statute; and *Marshall v. University of Hawaii,* 9 Haw.App. 21, 37–38, 821 P.2d 937 (1991), where a Hawaii State Appellate Court followed the reasoning of the court in Courtney. However, both of these cases are no longer good law. In *Furukawa v. Honolulu Zoological Society,* 85 Haw. 7, 18, 936 P.2d 643 (1997), the Hawaii Supreme Court held that while the workers' compensation scheme bars a civil action for physical and emotional damages resulting from work-related injuries and accidents, claims based on alleged intentional conduct of an employer are not barred. The court found that claims based on intentional conduct are not based on "accidents" related to the employment, and therefore do not fall within the confines of the workers' compensation scheme. *Id.; c.f. Morishige v. Spencecliff Corp.,* 720 F.Supp. 829, 837 (D.Haw.1989) (Hawaii Workers' Compensation Statute did not bar claim for emotional distress against employee for willful and wanton conduct.). Accordingly, Plaintiffs' claims for intentional infliction of emotional distress are not barred by Hawaii's Workers' Compensation Act. However, Plaintiffs' claims for negligent infliction of emotional distress are barred by the Act.

■ Nonetheless, Plaintiffs have failed to produce sufficient evidence to create a triable issue on the merits of their claim for intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must show that "(1) the act allegedly causing harm was intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in illness." *Wong v. Panis,* 7 Haw.App. 414, 772 P.2d 695 (1989). To defeat a motion for summary judgment, a plaintiff must show that defendant's actions were "without just cause or excuse, beyond the bounds of decency and extreme and outrageous." *Chedester v. Stecker,* 64 Haw. 464, 468, 643 P.2d 532 (1982). Mental distress can only be found "where a reasonable man ... would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues v. State,* 52 Haw. 156, 173, 52 Haw. 283, 472 P.2d 509 (1970).

■ Here, Plaintiffs have not demonstrated that Defendant's actions were unreasonable, and Plaintiffs do not point to any evidence indicating that Defendant's conduct was beyond all bounds of decency. In fact, in their memorandum in opposition, Plaintiffs fail to even address Defendant's motion for summary judgment with respect to Plaintiffs' claims for negligent and/or intentional infliction of emotional distress. Thus, Plaintiffs have not alleged sufficient conduct by Defendant to establish a claim for emotional distress. Accordingly, the court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' claims for negligent and/or intentional infliction of emotional distress.

## IV. Plaintiffs' Claims for Punitive Damages

■ In their First Amended Complaints, Plaintiffs assert a claim against Defendant for punitive damages. Plaintiffs allege that Defendant's conduct was willful and wanton and that Defendant acted in disregard of the rights and sensibilities of Plaintiffs. Defendant argues that Plaintiffs, claims for punitive damages should be dismissed because there is no evidence of intentional outrageous conduct which would warrant an award of punitive damages.

■ Hawaii law mandates that punitive damages be awarded only when the defendant has acted egregiously, intentionally, and deliberately, and with "a character of outrage frequently associated with a crime." *See Masaki v. General Motors Corp.,* 71 Haw. 1, 780 P.2d 566, 569 (1989). A plaintiff may be entitled to punitive damages where he can show "by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Id.* at 575; *see also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 839 P.2d 10, 37 (1992). "[P]unitive damages are not awarded for mere inadvertence, mistake, or errors of judgment. Something more than the mere commission of a tort is always required for punitive damages." *Ma-*

*saki*, 780 P.2d at 570 (citation and internal quotation marks omitted).

Even if the court were to accept the allegations contained in Plaintiffs' First Amended Complaints as true, there is no showing that Defendant acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference...." *Masaki*, 780 P.2d at 575. Accordingly, the court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' claims for punitive damages.[5]

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment. Specifically, the court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiffs' claims for promissory estoppel, negligent and/or intentional infliction of emotional distress, and punitive damages. The court DENIES Defendant's Motion for Summary Judgment with respect to Plaintiffs' claims for racial and/or age discrimination.

IT IS SO ORDERED.

---

5. The court's conclusion with respect to this issue is supported by the Ninth Circuit's recent decision in *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299 (9th Cir.1998). In *Ngo*, the Ninth Circuit concluded that in order to establish a claim for punitive damages for employment discrimination under 42 U.S.C. Section 1981a, the plaintiffs were required "to make a showing beyond the threshold level of intent required for compensatory liability." *Ngo*, 140 F.3d at 1303–04. The court explained that "[a]n award of punitive damages under Title VII is proper where the acts of discrimination giving rise to liability are willful and egregious, or display reckless indifference to the plaintiff's federal rights. In such circumstances, society has a strong interest in punishing the tortfeasor, and exemplary damages are most likely to deter others from undertaking similar actions. Punitive damages may not be awarded, however, where a defendant's discriminatory conduct is merely 'negligent in respect to the existence of a federally protected right,' since society's interest in punishing the tortfeasor is substantially reduced in such cases, and the deterrent effect of exemplary damages is likely to be much weaker. Thus, to be entitled to an award of punitive damages, the plaintiff must demonstrate that the defendant 'almost certainly knew that what he was doing was wrongful and subject to punishment.'" *Id.* The court explained that "[i]n adopting this standard, we join four other circuits that also require evidence of conduct more egregious than intentional discrimination to support an award of punitive damages in Title VII cases." *Id.* at 1304.