Ha Jenny NGO, Plaintiff–Appellee,

v.

**RENO HILTON RESORT CORPORA-TION, d/b/a Reno Hilton; Hilton Hotels Corporation, Defendants–Appellants.**

Ha Jenny NGO, Plaintiff–Appellant,

v.

**RENO HILTON RESORT CORPORA-TION, d/b/a Reno Hilton; Hilton Hotels Corporation, Defendants–Appellees.**

Ha Jenny NGO, Plaintiff–Appellee,

v.

**RENO HILTON RESORT CORPORA-TION, d/b/a Reno Hilton; Hilton Hotels Corporation, Defendants–Appellants.**

Nos. 95–16909, 95–16911 and 96–15553.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1996.

Decided April 9, 1998.

Scott M. Mahoney, Hilton Gaming Corporation, Las Vegas, Nevada, for the defendant-appellant, cross-appellee.

Timothy Sears, Washington, DC, for plaintiff-appellee, cross-appellant.

Before: BROWNING, SKOPIL, and BRUNETTI, Circuit Judges.

**JAMES R. BROWNING, Circuit Judge:**

Plaintiff Ha Jenny Ngo filed charges against Reno Hilton Resort Corporation alleging Hilton discriminated against her on the basis of her race, national origin, and sex in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. At the close of Ngo's case, the district court granted Hilton judgment as a matter of law on Ngo's punitive damage claim. The jury returned a verdict for Ngo and assessed compensatory damages.

Hilton appeals the denial of its motion to exclude evidence of Hilton's treatment of another cocktail server, the denial of its motions for judgment as a matter of law and judgment notwithstanding the verdict, and the award of attorneys' fees and costs. Ngo cross-appeals the district court's refusal to submit her request for punitive damages to the jury, and its denial of her motion to amend the judgment to provide retroactive relief. In a separate, unpublished memorandum disposition filed this date, we reject Hilton's claims, but reverse the district court's denial of Ngo's motion to amend the judgment to provide retroactive relief. In this opinion, we affirm the district court's denial of punitive damages as a matter of law.

**I.**

Ha Jenny Ngo, an Asian–American female, was hired as a cocktail server by Bally's Hotel and Casino in February 1992. Ngo was assigned a full-time schedule, but was classified by Bally's Beverage Department Managers as a part-time employee. Only cocktail servers were classified as part-time employees while working full-time hours. Interpreting the evidence in the light most favorable to Ngo, the record establishes that all of the cocktail servers were women.[1]

In August 1992, Hilton purchased the casino from Bally's, and adopted Bally's employee classifications. Hilton initially addressed misclassifications on a case-by-case basis, but ultimately conducted an audit and deter-

---

[1] Hilton stipulated that the two male "barbacks" were hired as full-time employees. An Assistant Beverage Manager and a cocktail server testified that only women were classified as part-time while working full-time. Moreover, Ngo's counsel stated at oral argument and Hilton did not deny that Hilton refused to permit Ngo to discover the classification of the remaining workers.

mined that thirty-five to forty employees were misclassified. Hilton prospectively reclassified as full-time employees cocktail waitresses working full-time but classified as part-time employees.

On July 20, 1993, Ngo developed complications with her pregnancy. Hilton's Assistant Beverage Manager told Ngo she would be granted a medical leave of absence.[2] Under hotel policy, employees became eligible for a medical leave of absence after one year of continuous full-time employment. On Ngo's behalf, the Food and Beverage Department transmitted a formal application for a medical leave of absence to Hilton's Human Resources Department. However, Hilton's Human Resources Director terminated Ngo after mistakenly determining she was ineligible for a leave of absence because she had not been classified as a full-time employee for a year. The Human Resources Director had not been informed that Ngo in fact had been working full-time for a year and a half. After learning of her termination, Ngo told Hilton's Employee Services Manager she had been working full-time for a year and a half, but was erroneously advised that her service with Bally's did not count towards her seniority with Hilton.

Ngo was rehired by Hilton as a cocktail waitress in October 1993, but lost her seniority and benefits as a result of her termination. Ngo obtained a full-time position four months later and was restored to a position comparable to her prior full-time position after another eight months.

In the fall of 1993, a white cocktail waitress who did not meet the length of service requirement for a leave of absence was nonetheless given two to three weeks off for her honeymoon. Her absence was approved by the Beverage Department Manager who hired Ngo.

## II.

Ngo claims the district court erred in entering judgment for Hilton on her claim for punitive damages. Ngo argues that Title VII's language and legislative history reflect a congressional intent to permit punitive damage awards based upon intentional discrimination. We do not agree.[3]

As enacted, Title VII did not provide for damages at all. *See Landgraf v. USI Film Products*, 511 U.S. 244, 253, 114 S.Ct. at 1490–91 (1994). The Civil Rights Act of 1991 amended Title VII to provide for both compensatory and punitive damages. *See* 42 U.S.C. § 1981a (1997). Under Title VII, as amended, punitive damages may be awarded "if the complaining party demonstrates that the respondent engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

The language of section 1981a tracks the standard for punitive damages established by the courts under other civil rights statutes, most notably 42 U.S.C. §§ 1981 and 1983,[4] and committee reports explaining the Civil Rights Act of 1991 explicitly state "[the provision's] standard for punitive damages is taken directly from civil rights case law." H.R.Rep. No. 91–40(II) at 29 (1991); *see also* H.R.Rep. No. 91–40(I) at 74 (1991). The principal issue raised here is whether Congress, by incorporating the standard for punitive damages "from civil rights case law," intended to make evidence of intentional discrimination sufficient to support punitive damages.

Ngo contends the prevailing approach to punitive damages in the civil rights case law was established in *Smith v. Wade*, 461 U.S.

---

**2.** Hilton's employee handbook defines a leave of absence as an authorized, unpaid absence for more than five consecutive, regularly-scheduled work days. An authorized leave of absence does not result in a loss of benefits or seniority.

**3.** We express no opinion on the standard for punitive damages in hostile work environment cases brought under Title VII. This present case involves a claim of discriminatory discharge, not of hostile work environment, and there is no contention that the employees involved were not acting within their authority.

**4.** *Compare* 42 U.S.C. § 1981a(b)(1)(requiring discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual" for punitive damages) *with Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)(holding that punitive damages may be awarded in a § 1983 case if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").

30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), a section 1983 case. In *Wade,* the Court expressly rejected the argument that the threshold for punitive damages must be higher than that for compensatory damages. *See id.* at 51, 103 S.Ct. at 1637–38. The Court's rationale was that because the state of mind required to prove a section 1983 violation was as high as that required to sustain a punitive damage award at common law, a plaintiff who satisfied the former standard necessarily satisfied the latter. *See id.* at 55–56, 103 S.Ct. at 1639–40. The Court concluded that "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Id.* at 51, 103 S.Ct. at 1637. Elsewhere in the *Wade* opinion, however, the Court formulated the standard for punitive damages under section 1983 as including "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others," *id.* at 56, 103 S.Ct. at 1640, and emphasized that even if this standard were met, the jury must also determine whether the defendant's conduct "is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards" before awarding punitive damages, *id.* at 54, 103 S.Ct. at 1639.

We expressly adopted the rationale of *Wade* in another section 1983 case, *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir. 1991):

> Once the threshold standard for punitive damages is met (which, as here, may be the same as the substantive standard for ordinary liability), we cannot review the jury's decision to award punitive damages, which represents its discretionary moral judgment about [the defendant's] culpability, other than for gross excessiveness.

*Id.* at 694 (citing *Wade,* 461 U.S. at 52, 103 S.Ct. at 1637–38). Other circuits have extended the Wade rationale to section 1981 claims, holding that evidence of an intentional civil rights violation is sufficient to permit a jury to consider awarding punitive damages. *See Barbour v. Merrill,* 48 F.3d 1270, 1277 (D.C.Cir.1995)(explaining that "evidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the jury to award punitive damages, provided the jury, in its 'discretionary moral judgment,' finds that the conduct merits a punitive award")(citing *Wade,* 461 U.S. at 52, 103 S.Ct. at 1637–38), *cert. granted,* 516 U.S. 1086, 116 S.Ct. 805, 133 L.Ed.2d 752 *and cert. dismissed,* 516 U.S. 1155, 116 S.Ct. 1037, 134 L.Ed.2d 113 (1996); *Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 205–06 (1st Cir.1987).

In the years leading up to the enactment of section 1981a, however, many other decisions departed from *Wade*'s approach. Notwithstanding *Wade*'s clearly-stated rationale that the threshold for punitive damages need not be higher than that for compensatory liability, a number of circuits expressly required a heightened evidentiary showing for punitive damages under section 1981. These circuits articulated a standard for punitive damages using language tracking *Wade*'s requirement of "evil motive or intent, or . . . reckless or callous indifference" to federal rights, but interpreted that standard to require a higher level of intent for punitive damages than for compensatory damages.[5] Under the heightened standard adopted in these cases, intentional acts of discrimination giving rise to section 1981 liability do not warrant punitive damages unless they evince "malice or reckless or callous indifference of an egregious character," *Beauford v. Sisters*

5. *See Stephens v. So. Atlantic Canners, Inc.,* 848 F.2d 484, 489–90 (4th Cir.1988) (explaining that "[a]lthough any form of discrimination constitutes reprehensible and abhorrent conduct, not every lawsuit under section 1981 calls for submission of this extraordinary remedy to a jury"); *Beauford v. Sisters of Mercy–Province of Detroit,* 816 F.2d 1104, 1109 (6th Cir.1987)(noting that "[t]he imposition of punitive damages in civil rights actions has generally been limited to cases involving egregious conduct or a showing of willfulness or malice on the part of the defendant"); *Walters v. City of Atlanta,* 803 F.2d 1135, 1147

(11th Cir.1986)(upholding the district court's finding of intentional discrimination, but vacating its punitive damage award against several defendants on the ground that the record did not show they "acted with either the requisite ill will or callous disregard of [the plaintiff's] federally guaranteed rights"); *see also Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 514 (7th Cir.1986)(upholding punitive damage award on the ground that the record disclosed evidence of "ill will against the plaintiff, or callous indifference to his federally protected rights").

*of Mercy–Province of Detroit,* 816 F.2d 1104, 1109 (6th Cir.1987), or a comparably reprehensible intent. This standard reflects the view that "[s]omething more than mere commission of a tort is always required for punitive damages." W. Page Keeton et al., *The Law of Torts* 9 (5th ed.1984).

Even courts that did not expressly adopt a heightened punitive damages standard under section 1981 or 1983 often applied the *Wade* standard in a manner that effectively raised the threshold for punitive damages. For example, notwithstanding our express adoption of *Wade*'s rationale in *Larez,* 946 F.2d 630, we reviewed punitive damage awards for sufficiency of evidence while simultaneously upholding intentional civil rights violations in *Woods v. Graphic Communications,* 925 F.2d 1195, 1206 (9th Cir.1991)(involving a section 1981 claim for intentional discrimination), and *Kennedy v. Los Angeles Police Dept.,* 901 F.2d 702, 708 (9th Cir.1990), *impliedly overruled on other grounds, Hunter v. Bryant,* 502 U.S. 224, 228–30, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)(involving a section 1983 claim based on an unlawful search and seizure). While these decisions cite to the *Wade* standard, their willingness to review the evidence supporting punitive damages is inconsistent with the rationale of *Wade*—that once a plaintiff has proven an intentional civil rights violation, punitive damages may be awarded at the jury's discretion.

Numerous decisions from other circuits handed down prior to the enactment of section 1981a also cite to *Wade,* but appear to apply a heightened standard for punitive damages under federal civil rights statutes. Like our decisions in *Woods* and *Kennedy,* these opinions review the evidence underlying punitive damage awards, after having upheld the intentional civil rights violations upon which those awards are based.[6]

The cases in this and other circuits expressly or impliedly departing from *Wade*'s rationale for punitive damages cast into doubt Congress' intent when it borrowed the standard for punitive damages under section 1981a "from civil rights caselaw." Did Congress intend to incorporate *Wade*'s rationale, or the heightened standard developed by many courts applying *Wade?* Although the legislative history of section 1981a does not clearly answer this question, the few remarks in the legislative history substantively addressing the standard for punitive damages suggest Congress intended to incorporate the heightened standard applied in many circuits rather than the rationale of *Wade.* The First House Report for the Civil Rights Act of 1991 states that "[p]laintiffs must first prove intentional discrimination ... and must meet an even higher standard ... to recover punitive damages." H.R.Rep. No. 91–40(I) at 72 (1991). The congressional record also contains at least one statement supporting a heightened standard for punitive damages. *See* 137 Cong. Rec. S 15472–01 (Oct. 30, 1991)(Interp. Mem. of Sen. Dole et al.)("Punitive damages are to be awarded only in extraordinarily egregious cases."). Moreover, our survey of section 1981 and 1983 cases applying *Wade* indicates that under the majority view when section 1981a was enacted, evidence of an intentional civil rights violation was not, without more, sufficient to support an award of punitive damages.

---

6. *See, e.g. Wulf v. City of Wichita,* 883 F.2d 842, 867 (10th Cir.1989)(upholding section 1983 liability based upon a First Amendment violation, but noting that "not every intentional violation of a plaintiff's constitutional rights subjects a defendant to punitive damages" and vacating punitive damage award); *Hernandez–Tirado v. Artau,* 874 F.2d 866, 869 (1st Cir.1989)(Breyer, J.)(upholding section 1983 liability based upon a First Amendment violation, but holding that "[i]f one accepts the proposition that not every case involving an intentional tort calls for punitive damages, that punitive damages are reserved for instances where the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards, then punitive damages cannot be assessed in this case"); *Ivey v. Wilson,* 832 F.2d 950, 958 (6th Cir.1987)(upholding section 1983 liability based upon a due process violation, but vacating award of punitive damages); *Lavicky v. Burnett,* 758 F.2d 468, 477 (10th Cir.1985)(upholding both the district court's finding of liability under section 1983 for due process and Fourth Amendment violations, and its denial of punitive damages as a matter of law); *Soderbeck v. Burnett County,* 752 F.2d 285, 289–90 (7th Cir.1985)(upholding both the district court's finding of section 1983 liability based upon a First Amendment violation, and its denial of punitive damages as a matter of law).

Accordingly, we interpret the language of section 1981a to require plaintiffs seeking punitive damages to make a showing beyond the threshold level of intent required for compensatory liability. An award of punitive damages under Title VII is proper where the acts of discrimination giving rise to liability are willful and egregious,[7] or display reckless indifference to the plaintiff's federal rights.[8] In such circumstances, society has a strong interest in punishing the tortfeasor, and exemplary damages are most likely to deter others from undertaking similar actions. Punitive damages may not be awarded, however, where a defendant's discriminatory conduct is merely "negligent in respect to the existence of a federally protected right," *Hernandez–Tirado*, 874 F.2d at 870, since society's interest in punishing the tortfeasor is substantially reduced in such cases, and the deterrent effect of exemplary damages is likely to be much weaker. Thus, to be entitled to an award of punitive damages, the plaintiff must demonstrate that the defendant "almost certainly knew that what he was doing was wrongful and subject to punishment." *Soderbeck v. Burnett County*, 752 F.2d 285, 291 (7th Cir.1985).

In adopting this standard, we join four other circuits that also require evidence of conduct more egregious than intentional discrimination to support an award of punitive damages in Title VII cases. *See McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 508 (1st Cir.1996)(quoting section 1981a House Report requiring plaintiff to meet "an even higher standard" for punitive damages); *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1216 (6th Cir.1996)(upholding the district court's finding of intentional discrimination in violation of Title VII, but concluding that the evidence did not support punitive damages); *Karcher v. Emerson Electric Co.*, 94 F.3d 502, 509 (8th Cir.1996)(upholding the district court's finding of intentional discrimination, but setting aside its award of punitive damages on the ground of insufficient evidence), *cert. denied*, ___ U.S. ___, 117 S.Ct. 1692, 137 L.Ed.2d 820 (1997); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 n. 9 (4th Cir.1994)(noting in dicta that "[w]hile 'intentional discrimination' suffices to recover compensatory damages, Congress requires a heightened showing of discriminatory action … to recover punitive damages").[9]

### III.

While the record clearly supports the jury's finding that Hilton discriminated against Ngo, it does not support an award of punitive damages. Hilton acted negligently and perhaps even recklessly in denying Ngo's request for a leave of absence and discharging her: although Ngo had satisfied Hilton's leave requirements, the Human Re-

---

7. *See Luciano v. Olsten Corp.*, 110 F.3d 210, 220–22 (2d Cir.1997)(affirming punitive damage award under section 1981a where the defendant drew up an impossible job description to justify terminating female employee); cf. *Yarbrough*, 789 F.2d at 514 (affirming award of punitive damages under section 1981 where defendant assigned African–American employee to do inferior work, stating "[w]e don't want no black guy in the front of the shop").

8. *See Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 582 (7th Cir.1996) (upholding the district court's award of punitive damages and its finding of reckless indifference to the plaintiff's rights where the defendant terminated the plaintiff for refusing to withdraw her discrimination claim with the state civil rights board, and gave false reasons for terminating her).

9. The standard for punitive damages under Title VII in the D.C., Second, and Seventh Circuits is less clear. Although the D.C. Circuit held that evidence of intentional discrimination was sufficient to support a punitive damages award in *Kolstad v. American Dental Ass'n*, 108 F.3d 1431, 1437–38 (D.C.Cir.1997), that court has voted to rehear *Kolstad* en banc, and therefore has vacated the panel's opinion, *see* 108 F.3d 1446 (D.C.Cir.1997). The Second Circuit has rejected an "extraordinarily egregious" standard for punitive damages in Title VII cases, *see Luciano v. Olsten Corp.*, 110 F.3d 210, 220 (2d Cir.1997), but has not decided whether evidence of intentional discrimination alone will support a punitive damage award. In *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576 (7th Cir.1996), the Seventh Circuit cited *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir.1995), for the proposition that "[e]vidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the [factfinder] to award punitive damages," 103 F.3d at 581; in *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125 (7th Cir.1997), however, the court appeared to set a higher threshold for punitive damages than for compensatory damages, *see id.* at 1132–33.

sources Director who fired Ngo failed to determine accurately the length of her full-time employment, and Hilton's Employee Services Manager erroneously told Ngo her service at Bally's did not count towards her seniority at Hilton. Moreover, Hilton's disposition of Ngo's leave request contrasts sharply with its decision to grant a white employee leave for her honeymoon despite her ineligibility for a leave of absence. These acts do not, however, evince an evil motive or a conscious and deliberate disregard for Ngo's federally-protected right against discrimination. To put it another way, negligent decisionmaking and poor communication among managers may properly give rise to compensatory liability under Title VII, but they do not, without more, warrant punishment, nor would such acts be deterred by an award of exemplary damages.

## IV.

Although we conclude the district court properly denied punitive damages as a matter of law, we reverse and remand for reconsideration of Ngo's motion for retroactive relief for the reasons stated in our memorandum disposition.