156 F.3d 989
 77 Fair Empl.Prac.Cas. (BNA) 1611,
74 Empl. Prac. Dec. P 45,499,
98 Cal. Daily Op. Serv. 7385,
98 Daily Journal D.A.R. 10,267
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
WAL-MART STORES INC., a Delaware corporation, Defendant-Appellee.
 Nos. 97-16108, 97-16602.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 13, 1998.
Decided Sept. 24, 1998.
 
 Robert J. Gregory, Equal Employment Opportunity Commission, Washington, DC, for plaintiff-appellant.
 Benjamin C. Thomas, Neal B. Thomas, Mitchell J. Resnick, Thomas & Elardo, Phoenix, AZ, for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona Alfredo C. Marquez, District Judge, Presiding. D.C. No. CV-94-00465-ACM.
 Before: BRUNETTI, TASHIMA, and GRABER, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 A jury returned a verdict in favor of appellant Equal Employment Opportunity Commission (EEOC), finding that Wal-Mart Stores, Inc. (Wal-Mart) intentionally discriminated against a job applicant, Jamey Stern (Stern), based on her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Prior to trial, the district court denied Wal-Mart's motion for partial summary judgment on the issue of punitive damages. After a trial on the merits, the jury awarded Stern back pay; however, the district court refused the EEOC's request for an instruction to the jury on the issue of punitive damages, ruling that 42 U.S.C. § 1981a(b)(1) requires a heightened standard of proof to sustain a punitive damages claim under Title VII.
 
 
 2
 The EEOC now appeals the district court's refusal to submit the issue of punitive damages to the jury. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 Jamey Stern worked at a Wal-Mart store in Green Valley, Arizona as a clothing clerk from April 1991 through August 1991, when she resigned her position so that she could attend classes at a community college. Shortly thereafter, Stern withdrew from the college. She later learned that she was pregnant.
 
 
 4
 On November 11, 1991, Stern reapplied for employment at the Green Valley Wal-Mart store. On November 18, 1991, Wal-Mart personnel manager Nance Hammond (Hammond) interviewed Stern. At trial, Stern testified that she told Hammond during the interview that she was pregnant and that Hammond "shared [Stern's] enthusiasm." However, Hammond "asked [Stern] if [she] felt any concerns about [her] working situation being pregnant." Stern claimed that she replied in a joking manner, "[w]ell, I'm not going to be carrying 50 pounds up and down the stairs."
 
 
 5
 According to Stern's testimony, she and Hammond then discussed three open positions for which Stern was qualified--in the softlines, layaway, and cashiering departments. Stern told Hammond that she would be interested in the layaway position, and Hammond said she felt that Stern "would be good in layaway and that would be great." However, Hammond informed Stern that she would have to take a drug test, administered by one of the store's assistant managers, Trish Ledbetter (Ledbetter), before she could be hired. Hammond then left the room to find Ledbetter, but was unable to locate her. When Hammond came back, she told Stern that they would call as soon as her drug test was scheduled.
 
 
 6
 After Ledbetter failed to contact her later that day, Stern called Wal-Mart each of the next two days and asked for Ledbetter. Finally, on the third day, November 21, 1991, Stern called and Ledbetter answered the phone. When Stern asked when she could take her drug test, Ledbetter replied, "[w]ell, we won't be hiring you." Stern then asked why she would not be hired, to which Ledbetter responded, "[w]ell, because of conditions of your pregnancy." Stern replied, "[w]ell, there are no conditions of my pregnancy. I'm fine." Ledbetter then said, "[w]ell, you said you couldn't carry any boxes," to which Stern responded, "[n]o, that's not true." Despite Stern's attempts to convince Ledbetter that she could carry heavy items, or, if not, that she could call someone in the receiving department to carry things for her, Ledbetter told Stern, "[w]ell, you know, we're not going to hire you.... You're welcome back after you've had the baby, and you can have a job in June." Stern's last comment to Ledbetter before hanging up the phone was, "[w]ell, I probably wont be needing a job in June, thank you."
 
 
 7
 On May 5, 1992, Stern filed a discrimination charge with the EEOC. After investigating the charge, the EEOC filed the present action under Title VII, alleging that Wal-Mart had refused to hire Stern because she was pregnant.
 
 
 8
 At trial, Wal-Mart painted a much different picture of Stern's interview process than that described by Stern. Hammond admitted that she interviewed Stern and filled out a pre-screening questionnaire recommending her for employment. However, according to Hammond's deposition testimony, which was read into the record at trial, Stern's pregnancy was never discussed during the initial interview. Hammond also testified in her deposition that immediately after her interview with Stern, Hammond went and got Ledbetter to continue the hiring process. Ledbetter testified at trial that she and Stern then went into a training room in the Wal-Mart store, where Ledbetter asked Stern questions from an "Interview Comment Sheet." One of the questions asked of Stern was whether she had any medical conditions that might limit her in the position for which she was applying. According to Ledbetter, Stern replied that she was pregnant and that she had some concerns about her pregnancy and her ability to perform the layaway job. Specifically, Ledbetter said that Stern expressed concerns about continuously going up or down stairs. Ledbetter testified that after asking Stern several more questions, she told Stern "if she felt better about her pregnancy or if things changed, for her to call me, but at that time, I only had the layaway position to offer, and if she felt she couldn't do that, I didn't have anything else to offer her at the time." The interview thus concluded. Ledbetter testified that she then took Stern out into the hall and told Hammond that "Stern had some concerns about her current pregnancy and that she wouldn't be joining at this time." According to Ledbetter, Hammond was surprised to learn that Stern was pregnant and disappointed that Stern would not be returning to work at Wal-Mart.
 
 
 9
 Ledbetter further testified that she had documented the face-to-face interview with Stern by taking notes on the "Interview Comment Sheet," but Wal-Mart never produced the sheet. Under Wal-Mart's hiring procedures, when a second interview is conducted, the interviewer is required to complete an "Interview Comment Sheet," which is retained in the applicant's file. During its investigation, the EEOC reviewed the files of fifty (50) other applicants who were hired by Wal-Mart at approximately the time Stern was interviewed. Each of those files contained an "Interview Comment Sheet." Stern's file did not.
 
 
 10
 Moreover, although Ledbetter insisted that she filled out the comment sheet, Hammond testified that she received the comment sheet from Ledbetter blank. Hammond testified that she did not find it odd that Ledbetter had not written anything on the sheet because Hammond assumed this was a result of Stern saying that she was not going to take the job. Wal-Mart denied at trial that Stern had ever had a conversation with Ledbetter after November 18, 1991, specifically denying that the telephone conversation of November 21, 1991 ever took place.
 
 
 11
 The EEOC also presented evidence at trial that Wal-Mart initially claimed that it had refused to hire Stern because she had indicated on her job application that she was unable to work more than two days per week. Stern's application actually contained no such statement.
 
 
 12
 The jury returned a verdict in favor of the EEOC, finding that Wal-Mart had engaged in intentional discrimination on the basis of pregnancy, in violation of Title VII, and awarded back pay. The district court, however, ruled that 42 U.S.C. § 1981a(b)(1) requires a higher standard of proof to sustain a punitive damages claim than that required for a finding of intentional discrimination and, therefore, refused the EEOC's request to submit the issue of punitive damages to the jury. The court stated that there must be "at least some evidence, malice or reckless indifference, and there just isn't in this case." The EEOC now appeals that ruling.ANALYSIS
 
 
 13
 The only issue on appeal is whether the jury, having determined that Wal-Mart had engaged in intentional discrimination on the basis of pregnancy, should have been given the opportunity to decide whether to award punitive damages. We review de novo the district court's legal conclusion as to whether damages are available. See Saratoga Fishing Co. v. Marco Seattle, Inc., 69 F.3d 1432, 1437 (9th Cir.1995); see also In re Air Crash Disaster Near Cerritos, California, 982 F.2d 1271, 1275 (9th Cir.1992) (applying a de novo standard to the district court's legal determination regarding the proper elements of a damages award); Knapp v. Eagle Property Management Corp., 54 F.3d 1272, 1281 (7th Cir.1995) (reviewing de novo the district court's determination that the facts of the case did not justify punitive damages).
 
 
 14
 We recently held in Ngo v. Reno Hilton Resort Corp., 140 F.3d 1299, 1304 (9th Cir.1998), that "the language of § 1981a ... require[s] plaintiffs seeking punitive damages to make a showing beyond the threshold level of intent required for compensatory liability." "An award of punitive damages under Title VII is proper where the acts of discrimination giving rise to liability are willful and egregious, or display reckless indifference to the plaintiff's federal rights." Id. (footnotes omitted) (emphasis added). Punitive damages may not be awarded, however, where a defendant's conduct is merely negligent. Id. "Thus, to be entitled to an award of punitive damages, the plaintiff must demonstrate that the defendant 'almost certainly knew that what he was doing was wrongful and subject to punishment.' " Id. (citing Soderbeck v. Burnett County, Wisconsin, 752 F.2d 285, 291 (7th Cir.1985)).
 
 
 15
 Although the present case was tried before we issued our decision in Ngo, the EEOC argued in its briefs on appeal, and at oral argument, that it met even a heightened standard for punitive damages because it presented evidence that reasonably could support a finding that "Wal-Mart's decisionmakers deliberately rejected Stern because of her pregnancy and conspired to cover up their unlawful discrimination by fabricating an interview that never took place." We agree.
 
 
 16
 In Ngo, an Asian-American female cocktail waitress, Ha Jenny Ngo (Ngo), was denied a medical leave of absence and was terminated when a Hilton manager erroneously determined that she did not meet the length-of-service requirement for such a leave. 140 F.3d at 1301. The confusion as to Ngo's eligibility for leave arose in part out of a misclassification of Ngo's status as a part-time worker by the previous owner of the Hilton hotel and casino. Id. at 1300-01. Ngo also presented evidence that a white female cocktail waitress who did not meet the length-of-service requirement was nonetheless granted leave for her honeymoon. Id. at 1301. Despite holding that the record supported Ngo's claim that Hilton had discriminated against her, we affirmed the district court's judgment for Hilton on Ngo's punitive damages claim. Because Hilton's acts did not "evince an evil motive or a conscious and deliberate disregard for Ngo's federally protected right against discrimination," we held that the district court properly denied punitive damages as a matter of law. Id. at 1305.
 
 
 17
 In the present case, the evidence would support a finding that Wal-Mart's actions were more egregious than the "negligent decisionmaking" and "poor communication among managers" that we held were legally insufficient to warrant punitive damages in Ngo. See id. at 1305. Here, the EEOC presented direct evidence of Wal-Mart's reckless disregard for Stern's federally protected right not to be discriminated against on the basis of her pregnancy, see 42 U.S.C. § 2000e-2(a), including evidence presented at trial that Ledbetter, a Wal-Mart assistant manager, specifically told Stern that she would not be hired because of conditions of her pregnancy. Even after Stern denied that her pregnancy would affect her ability to do the job for which she was applying, Ledbetter refused to hire her, instead inviting her to reapply when she was no longer pregnant. Significantly, Ledbetter almost certainly knew that her conduct was wrongful given that Wal-Mart provided her with training, and a handbook, explaining that discrimination based on pregnancy is illegal. Cf. Ngo, 140 F.3d at 1304; Harris v. L & L Wings Inc., 132 F.3d 978, 982 (4th Cir.1997) (affirming a punitive damages award based on evidence of reckless indifference to federally protected rights where the employer completely failed to address repeated complaints of pervasive sexual harassment); Luciano v. Olsten Corp., 110 F.3d 210, 220-22 (2d Cir.1997) (affirming a punitive damages award where the employer drew up an impossible job description for a female employee designed to ensure that her performance would be unsatisfactory, and then terminated her); Merriweather v. Family Dollar Stores of Indiana, Inc., 103 F.3d 576, 582 (7th Cir.1996) (affirming the district court's award of punitive damages where the defendant had terminated the plaintiff's employment for refusing to withdraw her discrimination claim, and gave false reasons for terminating her); Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 637 (7th Cir.1996) (affirming a punitive damages award based on evidence of at least reckless indifference where the owner of the defendant corporation and other high-level executives had a stated policy against women holding positions in upper-level management); Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 514 (7th Cir.1986) (affirming a punitive damages award where the defendant's "ill will against the plaintiff, or callous indifference to his federally protected rights" was evidenced by the defendant's failure to respond to complaints by the African-American plaintiff that he was assigned by a manager to an inferior work area, to do less lucrative work, based on his race).
 
 
 18
 Likewise, the evidence regarding the attempts by Wal-Mart managers to cover up their discriminatory conduct supports the EEOC's claim of reckless indifference to Stern's federally protected rights. The EEOC's Enforcement Guidelines provide that evidence that an employer's agents "planned and/or attempted to conceal or cover-up the discriminatory practices or conduct" can support a finding that the employer acted "with malice or reckless indifference to the complaining party's federally protected rights." EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991, reprinted in Fair Employment Practices Manual (BNA) 405:7091, at 7107 (July 7, 1992).[1] In this case, the EEOC presented the jury with evidence that Wal-Mart provided false reasons for not hiring Stern. For instance, during the EEOC investigation, Wal-Mart claimed that Stern was not hired because she chose not to take the job due to concerns about her pregnancy, and because her job application indicated that she was available to work only limited hours. Wal-Mart eventually was forced to admit that the latter reason was contrived, as Stern's application showed that she never requested limited hours. Thus, at trial, Wal-Mart claimed only that Stern wasn't hired because she chose not to work because of her pregnancy. However, the EEOC presented evidence that supports a finding that Wal-Mart, in order to cover up the discrimination, fabricated Stern's face-to-face interview with Ledbetter, during which Stern allegedly expressed her concerns about her pregnancy and her ability to perform the layaway job. See Merriweather, 103 F.3d at 582 (holding that reckless indifference to federal rights can be inferred from the fact that the employer "deliberately gave false reasons for firing [the plaintiff]").
 
 
 19
 In sum, the jury was presented with evidence that an assistant manager at Wal-Mart's Green Valley store intentionally discriminated against Stern based on her pregnancy and that the assistant manager and other Wal-Mart officials attempted to cover up their discriminatory conduct. Under these circumstances, we hold that the district court, as a matter of law, should have allowed the jury to determine whether punitive damages were warranted.
 
 CONCLUSION
 
 20
 The evidence presented by the EEOC at trial met the Ngo heightened legal standard for the award of punitive damages in a Title VII case. Therefore, we reverse the district court's refusal to submit to the jury the issue of punitive damages and remand the case to the district court for further proceedings consistent with this opinion.[2]
 
 
 21
 REVERSED and REMANDED.
 
 
 
 [1]
 The EEOC Guidelines "constitute '[t]he administrative interpretation of [Title VII] by the enforcing agency,' and consequently they are 'entitled to great deference.' " Albemarle Paper Co. v. Moody, 422 U.S. 405, 431, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (citing Griggs v. Duke Power Co., 401 U.S. 424, 433-34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971))
 
 
 [2]
 The district court amended its original judgment in this case in order to add on prejudgment interest to the jury's award. As a result, the EEOC filed two notices of appeal. Concerned that the first judgment it appealed from was nonfinal, the EEOC filed a notice of appeal to the amended judgment as well even though each notice of appeal raises the identical issue. We need only to reverse the amended judgment here, as it superseded the original judgment